[No. 27358. Department One. April 7, 1939.]

JAKE MATSON, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Defendant*, AMERICAN DOOR & MANUFACTURING COMPANY, *Appellant.*[1]

[1]Reported in 88 P. (2d) 825.

*L. B. Donley,* for appellant.

*F. W. Loomis* and *A. P. Wilson,* for respondent.

JEFFERS, J.—Jake Matson, claimant, an employee of American Door & Manufacturing Company, a corporation, on the 6th day of October, 1934, while unloading lumber from a railroad car, slipped and fell between the car and loading platform, striking his chest, back, and left thigh, and sustaining injuries for which he filed a claim with the department of labor and industries. This claim was adjusted on the employer's report and after an examination of claimant by Dr. Brachvogel. Neither the claim nor report of the employer showed any injury other than to the back and thigh. The report of the doctor indicated no injury other than that the small of the back was injured, left thigh discolored, and that there was no fracture. The treatment consisted of diathermy and strapping of the back. The estimated loss of time was three weeks. On November 21, 1934, the supervisor made an order awarding claimant a time loss of twenty-eight days, to November 6, 1934, and determined there was no permanent partial disability.

On September 27, 1935, an application was made to the joint board for a rehearing and reopening, and also a claim for injuries and disabilities not theretofore reported and acted upon, and there were set out in such application certain conditions not reported in the original claim or report of the examining doctor. Thereafter, the time for hearing on the application was extended, and on October 22, 1935, the joint board, by letter, notified claimant that he should withdraw his appeal to the joint board and address it to the super-

visor, as the joint board had no jurisdiction, inasmuch as the supervisor had never considered or passed upon the issues set out in the application. The supervisor, under date of November 5, 1935, in answer to a letter directed to him, advised the claimant that the application would not be considered as an appeal, but an application to reopen the claim, since there had been no previous action by the supervisor.

On January 6, 1936, the supervisor made an order, in which he recites:

"From a review of the medical examination report it has been determined that your present disability at this time is not the result of your injury of October 6, 1934, for which this claim was filed."

The order further shows that claimant was referred to Dr. H. C. Randolph for special examination. The order concludes with the following:

"Under the circumstances we are declining to reopen the claim and must continue the claim closed in accordance with our final notice of November 21, 1934."

The report of Dr. Randolph shows that claimant was sixty-three years old at the date of the examination, December 12, 1935; that he had never been injured before; that he had never consulted a doctor but once before the injury; that when he walks fast he becomes stifled for want of air; that he has some stiffness in the lower lumbar region if he sits for long, but this is not bad. The report further states that the doctor was not able to demonstrate positively any lesion of the heart, but suspected myocardial weakness, together with abnormal deposit of fat, as being responsible for his labored breathing upon exertion. The report further states that the doctor was not able to demonstrate any consequences of the alleged injury;

that the rigidity of claimant's spine is due to arthritic changes.

On February 17, 1936, claimant filed an application for rehearing before the joint board, not only on account of aggravation, but also on account of injuries and resulting disabilities arising from the original injury, which had not been previously submitted to or passed upon by the supervisor.

On March 9, 1936, the joint board entered an order granting the application for rehearing only as to the question of aggravation of disability, if any, resulting from the injury of October 6, 1934, and occurring subsequent to the closure of the claim, November 7, 1934, claiming it had no jurisdiction, because of the operation of the statute of limitation, to review the closure of the claim on November 7, 1934. Thereafter, the matter was continued by the joint board until November 4, 1936, at which time claimant appeared and presented, in support of his appeal, three lay witnesses, Dr. O. R. Austin, and himself.

Claimant testified that he had been in the employ of American Door & Manufacturing Company about ten years; that, during all this time, he had been doing the same kind of work, without loss of time on account of sickness; that he was injured on October 6, 1934, while engaged in removing green lumber from a freight car to a dry kiln; that he slipped and fell as he was getting down from the car, and struck his left hip, back, and chest against the car and the loading platform; that he fell about six feet; that he weighed approximately two hundred five pounds, and struck the ground hard; that he was not able to get up for some time; that he felt pain in his chest and back; that he was on the job that afternoon, but could not remember whether he worked or not; that he did not go to work the next day, but went to see Dr. Brach-

vogel, and told him of the accident, also telling him of the pain in his chest and back; that the doctor treated him for the back injury; that claimant attempted to return to work about a month later, on the advice of Dr. Brachvogel, but was unable to work but a few hours; that he has not been able to work since then; that he has pain in his chest and back, while before the injury he had no pain; that when he attempts to work or walk, he feels a shortness of breath; that this condition has been the same at all times since the accident; that he was never treated but once by Dr. Brachvogel before his injury, and that was for a cold.

Witnesses Fred Carlson, Axel Carlson and Archie Fox, called by claimant, testified that they had worked with claimant for from three to ten years; that they were well acquainted with him; that claimant was a good worker and, before he was injured, had kept up his end of the work; that they had never known of his being sick or to complain of any sickness; that he worked the afternoon of the accident, but did not come back again.

Dr. Austin testified that he had practiced for thirty-three years; that he first saw and examined claimant January 28, 1936; that he found some limitation of the spine and valvular heart trouble; that this heart condition was aggravated by slight exertion, affecting the breathing; that he is not able to carry on any gainful occupation, such inability being chiefly due to his heart condition; that, if his heart were good, he could probably get his back limbered up enough to do a little work; that claimant probably had some weakened heart condition prior to the accident; that it is difficult to figure out these heart conditions—sometimes they are not noticed until after an injury like this; that the doctor could not tell the condition of the heart before the accident; that the arthritic condition in the back

had probably been developing for some years; that, judging from the history, had it not been for the accident, claimant might have gone on with his work indefinitely.

At this hearing, the testimony was taken before L. E. O'Neill, examiner for the joint board; claimant was represented by his attorneys, and the employer by Lester E. Hitt, safety engineer.

At the request of the joint board, Drs. Graham, Lightfoot, and Randolph examined claimant on December 7, 1936, and thereafter submitted to the board their written report, in which they state that claimant complains of pain at the lumbosacral juncture when bending forward or to the right or left; that the pain is probably due to an arthritic condition, possibly aggravated by his alleged injury; that, according to claimant's statement, this back condition is only disabling to a minor degree; that his chief complaint is of shortness of breath on exertion. The doctors' report then concludes:

"We are of the opinion that his condition is fixed, that no further treatment is indicated, that he cannot carry on a gainful occupation, which is almost solely due to his cardiac disorder which is in the nature of a myocardial degeneration, probably hypertensive in origin. His PPD we rate as 5 degrees, due solely to back injury segregated from the physical disabilities which can in no way be attributed to his injury of October 6th, 1934."

On January 5, 1937, claimant was examined by Dr. Brachvogel, who submitted to the board his written report of the examination, in which he stated that claimant's present condition is not due to trauma, but is due to a preexisting condition not related to the accident; that his present condition is due to a myocarditis and a hypertension combined with a marked tremor; that breathing is difficult; that the present

condition is not the result of an industrial accident; that his condition is fixed, and permanent partial disability at this time is not over five degrees; that he is not able to carry on a gainful occupation.

Thereafter, the matter was again continued to February 17, 1937, when the testimony of Drs. Brachvogel, Randolph, Lightfoot, and Graham, was taken before the examiner, both the claimant and employer being represented. Dr. Brachvogel testified that claimant had called at his office for treatment on June 6th, 8th, and 10th, and July 2nd and 12th, prior to the injury, and that he was treated for bronchitis and cardiac decompensation; that the doctor advised claimant at that time to rest and not work; that he examined claimant the day after the injury and at other times, including June 10, 1935; that claimant's condition on January 5, 1937, indicated no aggravation since the examination of June 10, 1935; that claimant's present condition is not due to trauma, but to a preexisting myocarditis and hypertension, in no way due to or aggravated by the injury; that the doctor was doubtful about any permanent partial disability attributable to the accident, but that he gave him five degrees; that claimant was not able to work, due to arthritis and his heart trouble; that any strain would be dangerous; that claimant should not have been working before the accident, because of his heart condition; that his heart condition has not changed, probably because claimant has been inactive and put no strain on it, and that there seems to be no further decompensation.

Drs. Graham, Lightfoot, and Randolph testified in accordance with their written report.

From the deposition of Dr. LeComte, taken March 8, 1938, it appears that the witness was associated with Dr. Brachvogel, at Aberdeen, from October, 1933, to

August, 1936; that he knew claimant, and had treated him before his injury. The testimony of this witness was practically the same as that of Dr. Brachvogel as to claimant's condition before the injury, as to the treatment prescribed, and as to his condition after the injury, up to the time the doctor left Aberdeen. The witness testified that claimant's heart trouble and arthritis were not caused or aggravated by the injury of October 6, 1934.

After a consideration of the entire record, the joint board reversed the supervisor, with instructions to reopen the claim and award claimant five degrees permanent partial disability, and thereupon close the claim. The order further provided that a segregation should be made by the department for preexisting heart disease and preexisting disease of arthritis; the order stating that the record shows claimant has sustained no aggravation due to his injury.

Thereafter, an appeal to the superior court was taken by the claimant from the order of the board, and after a hearing by the court without a jury, upon the record of the joint board, judgment was entered reversing the joint board, remanding the cause to the department of labor and industries, and allowing claimant thirty degrees additional for permanent partial disability. This appeal is by the employer, American Door & Manufacturing Company, from the judgment entered.

Appellant's contention herein is that the action of the superior court in reversing the joint board and increasing the permanent partial disability allowance was contrary to the great weight of the evidence, and that claimant failed to sustain the burden of proof imposed upon him by law. Appellant also contends that the only matter before the joint board and the court was the question of aggravation of the back con-

dition from the time the original claim was closed, while respondent contends that not only the matter of aggravation, but also any injuries and resulting disabilities arising from the original injury and not previously submitted to or passed upon by the supervisor, were before the board and the court.

We agree with respondent's contention. The record shows that the application to reopen the claim was filed within a year from the date of the injury. This application was not passed upon by the supervisor until January 6, 1936, and the petition for rehearing before the joint board was filed February 17, 1936. The application to reopen was a new application, in so far as it pertained to conditions therein set forth which had not previously been presented to or considered by the supervisor; and, from the order refusing to reopen, the claimant had the right of appeal to the joint board. It is apparent from the record that the joint board considered both the heart condition and back condition, regardless of the apparent effect of its order, and it is also apparent that the trial court found that claimant's condition was due to the preexisting heart trouble and preexisting arthritis having been lighted up by the fall. See *Brittain v. Department of Labor & Industries,* 178 Wash. 499, 35 P. (2d) 49; *Pulver v. Department of Labor & Industries,* 185 Wash. 664, 56 P. (2d) 701.

We also agree with respondent that, even conceding that respondent had preexisting heart trouble, or arthritis, or both, those conditions would not necessarily deprive respondent of all benefits under the workmen's compensation act (Rem. Rev. Stat., § 7679 [P. C. § 3472], subd. 1). *Daugherty v. Department of Labor & Industries,* 188 Wash. 626, 63 P. (2d) 434.

There were in this case three lay witnesses, besides respondent. In regard to such testimony, we

stated, in *Kavaja v. Department of Labor & Industries*, 126 Wash. 284, 218 Pac. 196:

"While the testimony of appellant and other non-expert witnesses has some bearing on the question involved, yet, in the main, the actual facts must be determined from the testimony of the medical witnesses."

In the instant case, it seems to us the question of whether or not the heart condition and back condition were caused by, or aggravated by, the injury, and if so, the extent thereof, must depend upon medical testimony. This seems more apparent when we consider that the testimony is almost conclusive that respondent had some preexisting heart trouble and arthritis.

Five doctors testified for the department, and while naturally there was some difference in their testimony, they were all of the opinion that the heart condition of respondent was in no way connected with, or aggravated by, the injury of October 6th; that the back condition was fixed; and that while they were in doubt as to there being any permanent partial disability, they had allowed five degrees for the back condition. It must also be remembered that two of these doctors had examined respondent prior to the injury, and told him at that time that he should not continue working.

We have, opposed to this evidence, the testimony of Dr. Austin, who had never seen respondent until about a year after the injury, and whose conclusions were that had it not been for the injury, respondent could probably have gone on with his work indefinitely.

In the case of *Zankich v. Department of Labor & Industries*, 189 Wash. 25, 63 P. (2d) 427, we said:

"In all court proceedings under, or pursuant to, the workmen's compensation act, the decision of the department is to be considered to be prima facie correct,

and the burden of proof is on the party attacking the same. Rem. Rev. Stat., § 7697 [P. C. § 3488]; *Mecartea v. Department of Labor & Industries,* 176 Wash. 27, 28 P. (2d) 257; *O'Toole v. Department of Labor & Industries,* 182 Wash. 202, 46 P. (2d) 388; *Carter v. Department of Labor & Industries,* 183 Wash. 86, 48 P. (2d) 623.

"In reiterating this rule, we are mindful of our recent decisions holding that the decision of the department does not have the same presumptive effect when the testimony is taken before an examiner and a transcript thereof submitted to the joint board, as it does when the testimony is taken before one or more members of the board. *Cheney v. Department of Labor & Industries,* 175 Wash. 60, 26 P. (2d) 393; *Sweitzer v. Department of Labor & Industries* (on rehearing), 177 Wash. 28, 36, 30 P. (2d) 980, 34 P. (2d) 350; *Peterson v. Department of Labor & Industries,* 178 Wash. 15, 33 P. (2d) 650; *Dry v. Department of Labor & Industries,* 180 Wash. 92, 39 P. (2d) 609; *Rikstad v. Department of Labor & Industries,* 180 Wash. 591, 41 P. (2d) 391. These same cases, however, also hold that, when the testimony is taken before an examiner, neither the joint board *nor the trial court* is in any better position to weigh and consider the testimony than is this court; and, further, that, on appeal to this court, the cause is to be heard *de novo.*

"Even though there is a limitation upon the presumptive effect of the department's decision, under the circumstance just mentioned, the presumption still obtains to the extent that the burden is upon the party attacking the decision, and he must show by the preponderance of the evidence that the decision is incorrect. Furthermore, a contrary decision by the trial court, upon the admitted record, without additional testimony, does not of itself destroy the presumptive effect of the department's decision."

We also stated, in *Cooper v. Department of Labor & Industries,* 195 Wash. 315, 80 P. (2d) 830:

"Conceding that the numerical weight of the testimony is not decisive of this case, still the conclusion

reached by the department must be sustained unless the evidence clearly preponderates against such conclusion. . . .

"Even though this matter was heard before the examiners, the decision of the department is to be considered as *prima facie* correct, and the burden of proof still is upon the party attacking the same."

We do not believe the testimony as to the claimed physical facts is sufficient to overcome the medical testimony.

We have carefully read and considered the record herein, and we are satisfied, not only that the evidence does not preponderate in favor of the judgment of the trial court, but that the preponderance of the evidence supports the decision of the joint board.

Reversed and remanded, with directions to the trial court to affirm the order of the joint board.

BLAKE, C. J., MAIN, STEINERT, and ROBINSON, JJ., concur.